IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FERRA AUTOMOTIVE SERVICES, INC.,<br>Plaintiff<br>v.<br>CERTAIN UNDERWRITERS AT LLOYD'S LONDON – SYNDICATE #2001 AML a/k/a LLOYD'S LONDON and CERTAIN UNDERWRITERS AT LLOYD'S LONDON,<br>Defendants | NO.    20-712<br><br>Hon.<br><br><u>**JURY TRIAL DEMANDED**</u> |

## COMPLAINT

**AND NOW,** comes Plaintiff, Ferra Automotive Services, Inc. (hereinafter referred to as "FASI"), by its attorney, David Abrams, Esquire, Abrams Law, and files the within Complaint against Defendants, Certain Underwriters at Lloyd's London – Syndicate #2001 AML a/k/a Lloyd's London and Certain Underwriters at Lloyd's London (hereinafter collectively referred to as "Underwriters") upon a cause or causes of action whereof the following is a statement.

## NATURE OF THE CASE

1. The within matter in controversy is a civil action for recovery by FASI, a towing, removal, recovery, cleanup, and storage company for the cost of towing, removal, recovery, cleanup and storage against the insurance carrier (Underwriters) as a result of a vehicle impoundment by law enforcement when the tractor trailer carrying cargo on the highways of Pennsylvania struck a passenger vehicle from the rear resulting in a fatality on Route 28 in Allegheny County, Pennsylvania on December 6, 2017.

1

## PARTIES

2. Plaintiff, Ferra Automotive Services, Inc. (hereinafter referred to as "FASI") is a corporation having and maintaining a location for the conduct of its affairs located at 1315 Main Street, Pittsburgh, Allegheny County, Pennsylvania 15215.

3. Defendant, Certain Underwriters at Lloyd's London – Syndicate #2001 AML a/k/a Lloyd's London is believed to be an insurance carrier/certified reinsurer licensed with the Commonwealth of Pennsylvania, Insurance Department, with an address for purposes of this litigation and acceptance of service of process located c/o Mendes and Mount, Inc. 750 Seventh Avenue, New York, New York 10019-6829.

4. Defendant. Certain Underwriters at Lloyd's London is believed to be an insurance carrier/certified reinsurer licensed with the Commonwealth of Pennsylvania, Insurance Department with an address for purposes of this litigation and acceptance of service of process located c/o Mendes and Mount, Inc. 750 Seventh Avenue, New York, New York 10019-6829.

## JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant to 28 U.S.C. §1332(a) because FASI and Underwriters are citizens of different states and the amount in controversy exceeds $75,000.00 exclusive of interest and costs. Furthermore, jurisdiction and venue in the United States District Court for the Western District of Pennsylvania has been agreed upon by Underwriters with respect to policies of insurance issued with respect to this matter. See Exhibits A-18, B-12, and C-12 which are made part hereof and expressly incorporated herein by reference as though set forth with particularity herein.

2

6. Venue is this action properly lies in the United States District Court for the Western District of Pennsylvania pursuant to 28 U.S.C. §1391(b), as events, actions or omissions giving rise to FASI's claims occurred in this district and a substantial part of the property that is the subject of this action is situated in this district.

## FACTUAL BACKGROUND

7. At all times relevant and material hereto, FASI was engaged in the towing, recovery, removal, damage clean up, and storage industry within the Commonwealth of Pennsylvania and Allegheny County, in particular.

8. At all times relevant and material hereto, Underwriters, issued policies (certificates) of insurance with respect to the trucking industry and to insure the interest of various entities, including and without limitation B & T Express, Inc. (hereinafter referred to as "BTE") and which policies covered as additional insureds, the following entities or individuals, DBP Holdings, LLC, Loan Holdings, LLC, Aljen Enterprises, LLC, Omco Enterprises, LLC, RTQ1, LLC, RTQ2, LLC, Traficanti Trucking, LLC, A.T.T. Trucking, LLC, Quinn, LLC, Anthony Traficanti, Logistics by B&T, Inc., Sam Traficanti, T.Q. Leasing, Inc. and Diamond Express.

9. Upon information and believe all the aforesaid entities maintained physical facilities located at 400 Miley Road, North Lima, OH 44452.

10. Upon information and belief, the premises located at 400 Miley Road, North Lima, OH 44452 is owned by Sam Traficanti.

11. At all times relevant and material hereto, BTE was engaged in the transportation and trucking industry with a U.S. Department of Transportation #285442 and a motor carrier

3

#MC194598 and conducted business operations nationwide and within the Commonwealth of Pennsylvania, and Allegheny County, Pennsylvania and maintained offices and facilities located at 400 Miley Road, North Lima, OH 44452.

12. Upon information and belief, at all times relevant and material hereto, BTE was the registered owner, title holder, and owner or reputed owner of a Green 2014 International Harvester Prostar tractor power unit VIN 3HSVJAPR6EN033406 with a license plate #PWC1304 registered in the state of Ohio (hereinafter referred to as the "tractor") on the date and time of the event which is the subject matter of this litigation.

13. Upon information and belief, as a consequence of the inter-relationship between BTE and A.T.T. Trucking, LLC (hereinafter referred to as "A.T.T."), A.T.T. and others, may have maintained an ownership interest in the foregoing tractor.

14. Upon information and belief, at all times relevant and material hereto, Traficanti Trucking LLC was the registered owner or reputed owner of a 2007 Fontaine trailer identified by VIN 1R1F345217K570531 with a license plate #2283301 registered in the state of Maine (hereinafter referred to as the "trailer") on the date and time of the event which is the subject matter of this civil action.

15. Upon information and belief, as a consequence of the inter-relationship between Traficanti Trucking, LLC, BTE, and Omco Enterprises, Inc. (hereinafter referred to as "Omco"), all the aforesaid entities may have maintained an ownership interest in the trailer.

16. On or about December 6, 2017, Joy Global Conveyors, Inc. was the owner of the cargo contained on the trailer above referenced.

4

17. Upon information and belief, at all times relevant and material hereto, care, custody, and control of the tractor, trailer, and cargo was in BTE and were being operated under BTE's operating and motor carrier authority with the United States Department of Transportation.

18. Upon information and belief, at all times relevant and material hereto, and to the event which is the subject matter of this litigation, the aforesaid tractor and trailer were in use by and/or their use was granted to BTE which operated as a statutory/regulatory/contractual owner of the tractor and trailer (see 49 U.S.C. 14102; 49 C.F.R. 376.2, and 49 C.F.R. 376.12(c)).

19. At all times relevant and material hereto, the aforesaid tractor and trailer had identifying markings which identified the vehicles as owned or associated with BTE as indicated therein and/or thereon.

20. Upon trial of this action, it will be established that at all times relevant and material hereto, the tractor and trailer were operated by Arther T. Wells, an employee, officer, agent, servant, and/or representative of BTE, who was operating and proceeding with use of and under the motor carrier operating authority of BTE and at the direction of BTE while in the scope of and during the regular course of his duties, responsibilities and/or employment and/or representation with or for BTE and which at all times relevant and material hereto the tractor, trailer, and the cargo contained therein were under the care, custody, and control of BTE.

21. Upon information and belief, on or about December 6, 2017, the trailer ostensibly owned by TTLLC was attached to the tractor owned by BTE and was loaded with cargo owned and belonging to, Joy Global consisting of metal shafts, rods, and bars which were being

transported under the care, custody and control of BTE within the Commonwealth of Pennsylvania for the benefit of the BTE, TTLLC, and Joy Global, the owner of the cargo.

22. On December 6, 2017, while BTE was operating the tractor and attached trailer along Route 28 South bound at or about Fox Chapel/O'Hara Township approximately one-half mile north of Exit 6 about the Highland Park Bridge, Allegheny County, Pennsylvania, the tractor and trailer collided with the rear end of a passenger vehicle in which the operator of the passenger vehicle was killed. As a result of that collision, officials of the Pennsylvania State Police dispatched notice to FASI regarding the emergency created by the event and which required immediate response. FASI was directed to go to a location at or about the location of the collision to address the situation.

23. On December 6, 2017, as a consequence of the hazard produced by the event and conditions at the site, FASI, at the request of the Pennsylvania State Police, dispatched its crew with heavy equipment to address the hazardous conditions and to perform towing, recovery, removal, cleanup, and storage operations regarding the tractor, trailer, and cargo in accordance with oversight and directives of the Pennsylvania State Police.

24. Upon arrival, the Pennsylvania State Police directed removal of the vehicles by FASI and the impounding of the vehicles to be stored at FASI's facility pending a criminal investigation of the event and situation. FASI, under Pennsylvania State Police direction and oversight of traffic activities and operations by the Pennsylvania State Police at the scene, towed, recovered, and removed the vehicles from the scene and conducted cleanup operations and, thereafter, undertook storage of the impounded vehicles and cargo.

25. On or after the aforesaid date, FASE was advised by the Pennsylvania State Police that the tractor, trailer, and cargo had been impounded and that FASE should retain possession thereof, pending further investigation of the event by the Pennsylvania State Police and others.

26. At the scene of the accident, the tractor and trailer were identified as the vehicles which are the subject matter of this action, namely the 2014 Green International Harvester Prostar tractor VIN 3HSDJAPR6EN033406 with a license plate #PWC1304 and the 2007 Fontaine trailer VIN 1R1F345277K570531 with a license plate #2283301 Maine. FASI later determined that the owner or reputed owner of the cargo at the time of the event was Joy Global.

27. Under the oversight and direction of the Pennsylvania State Police, FASI directed its employees to undertake clearance of the scene, removal of the vehicles and debris and fulfilled its obligations with regard thereto and removed the tractor, trailer and cargo for impound and storage at its facility to await direction regarding their disposition.

28. On or about May 17, 2019, FASI received notification from the Pennsylvania State Police that FASI was authorized to release the vehicles from the impoundment directive earlier ordered by the Pennsylvania State Police in conjunction with the office of the District Attorney of Allegheny County, Pennsylvania. FASI, thereafter, notified BTE, Traficanti Trucking, LLC., and Joy Global Conveyors, Inc. of the charges incurred for the services it provided. Despite release of the vehicles by law enforcement, they as well as the cargo remain at FASI's facilities.

29. FASI submitted itemized statements of the services which it provided to BTE, TTLLC, and Joy Global and requested payment. A true and correct photocopy of the statement

7

of the events and charges related to the services provided by FASI is attached hereto, made part hereof, expressly incorporated herein by reference and designated Exhibit "A" hereof.

30. The charges submitted by FASI for the services provided were the fair, reasonable, authorized and customary charges for the services provided.

31. On August 12, 2019, FASI directed correspondence to BTE, Traficanti Trucking, LLC., and Joy Global Conveyors, Inc. requesting information on insurance coverage indicating that pursuant to the provisions of, inter-alia, 75 Pa.C.S. 3757 FASI had an unqualified right to information relevant to the ownership of the cargo, vehicle ownership, and information affecting compensation, including insurance coverage. The correspondence requested, inter-alia a copy of the insurance declaration page and policy issued with respect to the cargo, tractor, and trailer.

32. Despite requests for insurance information, full and complete documentary information with respect thereto was not forthcoming.

33. On January 8, 2020, FASI received an email from the third-party insurance adjuster which contained a reference to Certain Underwriters at Lloyd's London on 2 sheets of paper referring to policies #178297C-001 and #178297F -002. Despite a request for all policies only the two (2) sheets thereof were furnished.

34. On January 14, 2020, FASI again requested full and complete copies of all respective insurance policies involved regarding this matter.

35. On February 3, 2020, Lloyd's third-party adjuster remitted a document referenced as policy #178297F-003, but never furnished the policies referenced as #178297C-001 or policy #178297F-002.

36. On March 20, 2020, FASI, pursuant to instructions on policy #178297C-001 sent correspondence directly to Underwriters c/o its agent, Transure Services requesting copies of all policies and demanding payment thereunder.

37. On April 16, 2020, FASI received, from counsel for Underwriters, copies of Certificates of Insurance issued to BTE by Underwriters number #178297C-001, #178297F-002, and #178297F-003.

38. Policy certificate #178297C-001(Motor Truck Liability – Motor Truck Cargo) provides coverage and payment for commodities hauled in the amount of at least $100,000.00 (Exhibit No. A6-¶2; A7;A9, and A13) and for Debris Removal in the amount of $10,000 which is <u>in addition to the foregoing coverage</u> (Exhibit No. A6 and A9). Furthermore, policy certificate #178297C-001 provides, in relevant part as follows: (Exhibit A7, ¶8)

"(j) Company's options. It shall be optional with the company to take all, or any part, of the property at the agreed or appraised value, or to repair, rebuild, or replace the property destroyed or damaged with other like, kind and quality within a reasonable time, on giving notice of its intention to do so within sixty (60) days after the receipt of the proof of loss herein required."

True and correct photocopies of the excerpted pages Exhibits A5, A6, A7, A9, A13, and A18 of policy Certificate #178297C-001 are attached hereto, made part hereof and expressly incorporated herein by reference as though set forth with particularity herein.

39. Paragraph 7 (c) of policy Certificate #178297C-001 requires the insured (BTE) to use all reasonable means to save and preserve the property at and after any loss insured against. See Exhibit A7) and Exhibit A5, ¶4 provides as follows:

"**Protection of Property**.

In case of loss, it shall be lawful and necessary for the insured, his or their factors, servants and assigns, to sue, labor and travel for, in and about the defense, safeguard and recovery of the property insured hereunder, or any part thereof, without prejudice to this insurance, nor shall the acts of the insured or the Company, in recovering, saving, and preserving the property insured in case of loss be considered a waiver or an acceptance of abandonment. The expenses so incurred shall be borne by the insured and Company proportionately to the extent of their respective interests."

See Exhibit A5 which is attached hereto, made part hereof expressly incorporated herein by reference as though set forth with particularity herein.

40. Policy Certificate #178297F-002 (Lloyd's Automobile Physical Damage Form N.M.A 1650) provides coverage for:

"2. DEFINITION OF PERILS.

SECTION A. FIRE, LIGHTNING AND TRANSPORTATION.

This section covers

(iii) loss or damage resulting from the standing, sinking, burning, collision or derailment of any conveyance in or upon which the Automobile is being transported on land or on water, including general average and salvage charges for which the Assured is legally liable." A true and correct photocopy of the excerpt of policy Certificate #178297F-002 (Exhibit B8) referencing the foregoing provisions is attached hereto, made part hereof, expressly incorporated herein by reference as though set forth with particularity herein

"SECTION C. COLLISION OR UPSET.

This section covers loss of or damage to an Automobile caused by accidental collision of the Automobile with another object, or by upset, provided always that the deductible specific in the Schedule shall be deducted from the amount of each and every loss or damage to each Automobile. (See Exhibit B8).

10

41. Policy Certificate #178297F-002 provides as follows;

"PROTECTION OF SALVAGE. In the event of any loss or damage, whether covered hereunder or not, the Assured shall protect the property from other or further loss or damage, and any such other of further loss or damage, due directly or indirectly to the Assured's failure to protect shall not be recoverable hereunder. Any such act of the Assured or Underwriters in recovering, saving and preserving the property described herein, shall be considered as done for the benefit o all concerned and without prejudice to the rights of either party, and where the loss or damage suffered constitutes a claim hereunder, then all reasonable expenses thus incurred shall also constitute a claim hereunder. . . "

See Exhibit B11 which is attached hereto, made part hereof, and expressly incorporated herein by reference as though set forth with particularity herein.

42. Policy Certificate #178297F-002 provides a Towing Extension Endorsement in the amount of $5,000.00 for additional towing coverage above stated value/actual cash value. (See Exhibit B19 which is attached hereto, made part hereof, and expressly incorporated herein by reference as though set forth with particularity herein.)

43. Policy Certificate #178297F-002 further provides as follows;

### Salvage Clause

"It is a Condition of this Insurance that in the event of loss or damage covered hereunder, the Underwriters may, at their option, pay the amount stated under the Limit of Liability in the Schedule or in the actual cash value (whichever is the lesser amount), less any applicable deductible, and such payment shall entitle the underwriters to all salvage resulting after such loss or damage.

It is agreed that the Assured shall have first refusal of the bid for salvage."

See Exhibit B17 which is attached hereto, made part hereof, and expressly incorporated herein by reference as though set forth with particularity herein.

44. Policy Certificate #178297F-002 (Automobile Physical Damage From N.M.S. 1650) indicates a scheduled value with respect to cargo of $185,000.00 (see Exhibit B6 which is attached hereto, made part hereof and expressly incorporated herein by reference as though set forth with particularity herein) for any combination of automobile, truck, tractor, trailer or semi-

11

trailer and a towing extension coverage endorsement above the policy stated value/actual cash value in the amount of $5,000.00. A true and correct photocopy of the referenced schedule and endorsement is attached hereto, made part hereof expressly incorporated herein by reference and designated Exhibit B19 which are made part hereof and expressly incorporated herein by reference as though set forth with particularity herein.

45. Policy Certificate #178297F-002 sets forth as Additional Named Insureds DBP Holdings, LLC, Loan Holdings, LLC, Aljen Enterprises, LLC, Omco Enterprises, Inc., RTQ1, LLC, RTQ2, LLC, Traficanti Trucking LLC, A.T.T. Trucking, LLC., Quinn I, LLC, Anthony Traficanti, Logistics by B & T, Inc., Sam Traficanti, T.Q. Leasing, Inc. an Diamond Express. (See Exhibit B31 which is attached hereto, made part hereof, and expressly incorporated herein by reference as thought set forth with particularity herein.

46. Pursuant to the provisions of the Salvage Clause, FASI avers that it will be established at trial that Underwriters is considered as having a property interest/ownership interest in the vehicles and cargo and is, therefore, considered an owner of the salvage <u>with only an option to elect by which method it will make payment for the salvage</u>.

47. Policy Certificate #178297F-003 (Lloyd's Automobile Physical Damage Form N.M.A 1650) provides coverage for:

"2. DEFINITION OF PERILS.
SECTION A. FIRE, LIGHTNING AND TRANSPORTATION.
This section covers
(iii) loss or damage resulting from the standing, sinking, burning, collision or derailment of any conveyance in or upon which the Automobile is being transported on land or on water,

12

including general average and salvage charges for which the Assured is legally liable." A true and correct photocopy of the excerpt of policy Certificate #178297F-002 (Exhibit C8) referencing the foregoing provisions is attached hereto, made part hereof, expressly incorporated herein by reference as though set forth with particularity herein

"SECTION C. COLLISION OR UPSET.

This section covers loss of or damage to an Automobile caused by accidental collision of the Automobile with another object, or by upset, provided always that the deductible specific in the Schedule shall be deducted from the amount of each and every loss or damage to each Automobile."

See Exhibit C8 attached hereto, made part hereof and expressly incorporated herein by reference as though set to the with particularity herein.

    48.    Policy Certificate #178297F-003 provides as follows;

"PROTECTION OF SALVAGE. In the event of any loss or damage, whether covered hereunder or not, the Assured shall protect the property from other or further loss or damage, and any such other of further loss or damage, due directly or indirectly to the Assured's failure to protect shall not be recoverable hereunder. Any such act of the Assured or Underwriters in recovering, saving and preserving the property described herein, shall be considered as done for the benefit of all concerned and without prejudice to the rights of either party, and where the loss or damage suffered constitutes a claim hereunder, then all reasonable expenses thus incurred shall also constitute a claim hereunder. . . "

See Exhibit C11 which is attached hereto, made part hereof, and expressly incorporated herein by reference as though set forth with particularity herein.

    49.    Policy Certificate #178297F-003 further provides as follows;

<u>Salvage Clause</u>

"It is a Condition of this Insurance that in the event of loss or damage covered hereunder, the Underwriters may, at their option, pay the amount stated under the Limit of Liability in the Schedule or in the actual cash value (whichever is the lesser amount), less any applicable deductible, and such payment shall entitle the underwriters to all salvage resulting after such loss or damage.

It is agreed that the Assured shall have first refusal of the bid for salvage."

13

See Exhibit C17 which is attached hereto, made part hereof, and expressly incorporated herein by reference as though set forth with particularity herein.

50. The copy of policy Certificate #178297F-003 indicates a scheduled value with respect to cargo of $185,000.00 for any combination of automobile, truck, tractor, trailer or semi-trailer (Exhibit C6) and an additional endorsement providing $50,000.00 in coverage for undescribed trailers (Exhibit C19) and an additional towing extension endorsement in the amount of $5,000.00 (Exhibit C31) all of which are attached hereto, made part hereof, and expressly incorporated herein by reference as though set forth with particularity herein.

51. Pursuant to the provisions of inter-alia, the Salvage Clause, it will be established at trial that Underwriters is considered as having a property interest/ownership interest in the vehicles and cargo and, therefore, is considered an owner of the salvage with only an option to elect by which method it will make payment for the salvage.

52. As of April 23, 2020, FASI is owed $228,475.00 for the services it provided for towing, recovery, removal, and cleanup of the accident scene and storage with interest thereon at the rate of six (6%) from December 6, 2017 together with additional accruing charges for continuing storage attributable to trailer, tractor and cargo at the rate of $250.00 per day from and after April 23, 2020.

53. Despite FASI's requests for payment, FASI has not received any payment of the balance owed from Underwriters, BTE, TTLLC, Joy Global, or anyone else for the balance due for towing, recovery, removal, cleanup and storage charges incurred and the trailer, tractor, and cargo remain at the FASI's facilities accruing additional daily storage charges.

54. At all times relevant and material hereto FASI and Underwriters operated and functioned by and through their authorized and respective officers, directors, shareholders, members, agents, representatives, employees, and servants who were acting within the course of their employment and scope of their authority and duties with the respective parties.

55. Upon information and belief, it will be established at time of trial of this matter that all conditions precedent to payment have been satisfied.

## FACTUAL ALLEGATIONS

### COUNT I – THIRD PARTY BENEFICIARYEACH OF CONTRACT
### FERRA AUTOMOTIVE SERVICES, INC.
**Plaintiff**
v.
**CERTAIN UNDERWRITERS AT LLOYD'S LONDON – SYNDICATE #2001 AML a/k/a LLOYD'S LONDON and CERTAIN UNDERWRITERS AT LLOYD'S LONDON,**
**Defendants**

56. The averments of ¶1 through 55 of FASI's complaint are made part hereof, and expressly incorporated herein by reference as though set forth with particularity herein.

57. The policy certificates issued by Underwriters covered the policy period of April 1, 2017 to May 1, 2018 during which the events of December 6, 2017 and following occurred.

58. Pursuant to the provisions of policy Certificates #178297C-001, #178297F-002, and #178297F-003 (see ¶'s 38, 42, and 44 hereof), it was well within the contemplation of the parties (i.e. BTE and Underwriters) that persons or entities who provided services related to towing, recovery, removal and storage subsequent to an event causing loss or damage were beneficiaries of the contracts of insurance issued with respect to this matter (see ¶' 38, 42, and 44 of this Complaint).

59. It was well within the contemplation of Underwriters and the Assured (insured) namely BTE, et al. that a service provider such as FASI would be a third party beneficiary of the coverages furnished to inter-alia BTE, Traficanti Trucking, LLC, A.T.T. Trucking, LLC, Omco Enterprises, LLC and Joy Global Conveyors, Inc., et al. if an event such as that which occurred December 6, 2017 occurred with respect to the vehicles and cargo.

60. Upon the events of December 6, 2017 and the damage sustained to the vehicles as a result of the collision of December 6, 2017, it is averred that upon trial of this matter, it will be established that Underwriters automatically obtained a property interest/ownership interest in the tractor, trailer, and cargo pursuant to the provisions of policy Certificates #178297C-001; Certificate #178297F-002; and policy Certificate 178297F-003.

61. FASI is a third-party beneficiary of the contracts of insurance issued by Underwriters to BTE, Traficanti Trucking, LLC, A.T.T. Trucking, LLC, Omco Enterprises, LLC and Joy Global Conveyors, Inc., et al. with respect to this matter.

62. Under the provisions of the respective insurance certificates and coverages, FASI is entitled to payment of the balance owed as outlined in the provisions of ¶52 of this Complaint.

63. Although requested by FASI, Underwriters has failed to make payment of the balance and continuing balance owed to FASI with respect to this matter.

WHEREFORE, Plaintiff, Ferra Automotive Services, Inc. requests judgment in favor of Ferra Automotive Services, Inc. and against Certain Underwriters at Lloyd's London – Syndicate #2001 AML a/k/a Lloyd's London and Certain Underwriters at Lloyd's London, jointly and severally, in the amount of $228,475.00 for the services it provided for towing, recovery,

removal, and cleanup of the accident scene and storage with interest thereon at the rate of six (6%) from December 6, 2017 together with additional accruing charges for continuing storage attributable to trailer, tractor and cargo at the rate of $250.00 per day from and after April 23, 2020.

<u>**COUNT II – QUASI-CONTRACT/UNJUST ENRICHMENT**</u>
**(Alternatively, and cumulatively)**

**FERRA AUTOMOTIVE SERVICES, INC.**
**Plaintiff**
**v.**
**CERTAIN UNDERWRITERS AT LLOYD'S LONDON – SYNDICATE #2001 AML a/k/a LLOYD'S LONDON and CERTAIN UNDERWRITERS AT LLOYD'S LONDON,**
**Defendants**

64. The averments of ¶1 through 63 of FASI's complaint are made part hereof, and expressly incorporated herein by reference as though set forth with particularity herein.

65. Pursuant to the provisions of Underwriters policy certificates issued with respect to this matter, upon the events of December 6, 2017 and following, and the damage sustained to the vehicles as a result of the collision of December 6, 2027, Underwriters automatically obtained a property interest/ownership interest in the tractor, trailer, and cargo.

66. The provisions of, inter-alia, <u>75 Pa.C.S. §3757</u> set forth that entities charged with removal of vehicles and cargo shall have the unqualified right to be compensated for their service. Specifically, the statute provides as follows:

"**§3757 Compensation for incident removal costs**

    (a) **General rule.**- Notwithstanding any other law or regulation, any entity incurring the cost of removing a vehicle or cargo at any accident scene if the removal is authorized by a police officer shall have the unqualified right to compensation for the cost of removal and cargo storage and cleanup from the owner of:
        (1) A vehicle removed.

17

    (2) A vehicle, the cargo of which was removed in whole or part.
    (3) The cargo removed.

  (b) Right to Information – A towing company that removes a vehicle or cargo under subsection (a) shall have the unqualified right to any information relevant to vehicle ownership and information affecting compensation, including, but not limited to insurance information."

67. FASI, as a provider of services for towing, recovery, removal, cleanup, and storage was, and is, entitled to compensation for the services it furnished with respect to the towing, recovery, removal, cleanup, and storage related to the event above set forth.

68. Solely and proximately as a consequence of, and by reason of, the actions and inaction of Underwriters as outlined above, and as a consequence of Underwriters' property interest/ownership interest in the vehicles and cargo and failure to make payment of the charges owed to FASI, pursuant to, inter-alia, the statutory provisions of <u>75 Pa C.S. §3757</u>, <u>73 P.S. 1971.3(e)</u>; <u>75 Pa.C.S. 3743.1</u>; <u>13 Pa.C.S. 9311</u>; <u>13 Pa.C.S.9333</u>; <u>6 P.S. 11</u>; <u>6 P.S. 15</u> and the <u>common law of the Commonwealth of Pennsylvania</u>, FASI has sustained the damages set forth in ¶52 above and is entitled to compensation from the Underwriters as outlined in ¶52 of this Complaint.

69. As a consequence of the services provided, FASI, as of as of April 23, 220 is owed the sum of $228,475.00 for towing, recovery, removal, and cleanup of the accident scene and storage with interest thereon at the rate of six (6%) from December 6, 2017 together with additional accruing charges for continuing storage attributable to trailer, tractor and cargo at the rate of $250.00 per day from and after October 24, 2019.

70. Although requested by FASI, Underwriters has failed to pay the balance owed.

WHEREFORE, Plaintiff, Ferra Automotive Services, Inc. requests judgment in favor of Ferra Automotive Services, Inc. and against Certain Underwriters at Lloyd's London – Syndicate #2001 AML a/k/a Lloyd's London and Certain Underwriters at Lloyd's London, jointly and severally, in the amount of $228,475.00 for the services it provided for towing, recovery, removal, and cleanup of the accident scene and storage with interest thereon at the rate of six (6%) from December 6, 2017 together with additional accruing charges for continuing storage attributable to trailer, tractor and cargo at the rate of $250.00 per day from and after April 23, 2020.

Attorney for Ferra Automotive Services, Inc., Plaintiff


/s/David Abrams, Esquire
DAVID ABRAMS, ESQUIRE
ABRAMS, LAW FIRM
12A N. Meadowcroft Avenue
Pittsburgh, PA 15216
Telephone: 412-207-9520
Fax: 412-207-9531
PA Supreme Court #15983